UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| FEDERAL ENGINEERS AND CONSTRUCTORS, INC., | ) ) ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No.: | 3:19-CV-73-KAC-JEM |
| RELYANT GLOBAL, LLC, et al., | ) ) ) | | |
| Defendants. | ) ) | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the "Motion for Partial Judgment on the Pleadings" [Doc. 59] of Defendant/Counter Plaintiff, Relyant Global, LLC ("Relyant") and Defendant Lexon Insurance Company's ("Lexon") (collectively "Defendants"). Defendants move for partial judgment on the pleadings with respect to Plaintiff's claims for (1) a violation of the federal Prompt Payment Act, 31 U.S.C. §§ 3901, *et seq.* (PPA); (2) a violation of the Tennessee Prompt Payment Act, Tennessee Code Annotated §§ 66-34-101, *et seq.* (TPPA); (3) punitive damages; and (4) attorney's fees and costs. As set forth below, the Court grants Defendants' motion in part and denies Defendants' motion in part.

I. **Factual Background**[1]

This suit arises from Relyant's termination of a subcontract with Federal Engineers and Constructors, Inc. ("FE&C") to renovate a United States Air Force dormitory in Missouri [*See* Doc. 52]. The United States Army Corps of Engineers ("USACE") hired Relyant as the prime contractor for the renovation project [*Id.* ¶ 7]. In October 2017, Relyant, a Tennessee company,

---

[1] Because Plaintiff is the nonmoving Party, the Court describes the facts in the light most favorable to it. *See Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015).

subcontracted with FE&C, a Washington company, for the renovation project [*Id.* ¶ 8].[2] Lexon acted as a surety and posted a bond with Relyant as required by the Miller Act, 40 U.S.C. §§ 3131, 3133 [*Id.* ¶ 10]. Approximately one year after entering into the agreement, Relyant terminated the subcontract following FE&C's allegedly fraudulent price quotes for medicine cabinets [*See* Doc. 52-5]. FE&C maintains Relyant used the medicine cabinet price discrepancy as a pretense to cancel the contract and avoid payment [Doc. 52 ¶ 22; *see also* Doc. 64 at 4]. In response to the termination, FE&C filed suit asserting various claims related to the alleged breach of contract [Doc. 52]. Defendants, in response, asserted counterclaims for breach of contract, fraud, and other causes of action [*See* Doc. 57 at 25-28]. Defendants now move for judgment on the pleadings with respect to FE&C's claims for a violation of the PPA (Count Three), violations of the TPPA (Counts Four and Five), punitive damages (Count Six), and attorney's fees and costs (Counts Four and Seven).

## II. **Legal Standard**

The Court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss for a failure to state a claim. *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). To survive a motion for judgment on the pleadings, a complaint must contain sufficient facts "'to state a claim to relief that is plausible on its face.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

---

[2] Throughout their briefing, the Parties cite and refer to the current text of relevant Tennessee and Missouri law. But the substantive law that the Parties incorporated into their subcontract was the law in effect at the time they entered the contract. *See Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, 625 S.W.3d 830, 834 n.11 (Tenn. 2021). Thus, as appropriate, the Court applies the substantive law that was in effect at the time the Parties' entered the subcontract. *See id.*

2

Court must construe the complaint in the light most favorable to Plaintiff, accept all well-pled factual allegations as true, and draw all reasonable inferences in the Plaintiff's favor. *Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court may grant a motion for judgment on the pleadings only "'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Moderwell*, 997 F.3d at 659 (quoting *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)).

III. <u>Analysis</u>

    **A. Count Three: No Private Right of Action Exists under Section 3905 of the PPA.**

Count Three of the Amended Complaint asserts that Relyant's failure to pay FE&C violates Section 3905 of the PPA and entitles Plaintiff to recover an interest penalty under the PPA [Doc. 52 ¶¶ 53-54]. Section 3905 of the PPA requires prime contractors to include a provision to pay interest on late payments in applicable subcontracts. 31 U.S.C § 3905(b)(2). It appears that the subcontract between FE&C and Relyant did not include such a provision [*See* Doc. 52-1; *see also* Doc. 64 at 21]. However, as a matter of law, no private right of action exists under the PPA to implicitly incorporate such a provision into an applicable contract. *United States ex rel. IES Com., Inc. v. Cont'l Ins. Co.*, 814 F. Supp. 2d 1, 3-4 (D.D.C. 2011); *see also EMTA Insaat Taahhut ve Ticaret A.S. v. Cosmopolitan Inc.*, No. 20-1457, 2020 WL 6118839, at *7 (D. Md. Oct. 15, 2020) (collecting cases finding no private cause of action). FE&C cites to no case to the contrary [*See* Doc. 64 at 20-22].

Undeterred by the lack of a private cause of action, FE&C's Response to Defendants'

3

motion advances a more creative theory of liability. FE&C disclaims any cause of action under the PPA as pled, and instead asserts that it is proceeding under a breach of contract theory in Count Three [*See* Doc. 64 at 21 ("FE&C is not bringing a private right of action under the federal Prompt Payment Act, but is instead seeking enforcement of a contractual penalty.")]. Under FE&C's theory, it is entitled to recover interest under the PPA through Section 17.6 of the subcontract, which generally incorporates all "terms and conditions . . . required by law" [*Id.* at 20-22 (quoting Doc. 52-1 ¶ 17.6)]. Plaintiff also notes that Appendix C of the subcontract incorporates Federal Acquisition Regulation Section 52.232-27 [*Id.* at 21]. That regulation provides that a "Contractor shall include . . . [a]n interest penalty clause that obligates the Contractor to pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause" [Doc. 52-1 at 70]. *See also* 48 C.F.R. § 52.232-27.

Despite FE&C's creativity, its legal theory based on a breach of contract is not supported by the cause of action it actually pled in Count Three. Count Three of the Amended Complaint asserts a claim for a violation of Section 3905 of the PPA, not a claim for breach of contract. FE&C is the master of its own complaint, and the language of the Amended Complaint controls.[3] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514-15 (6th Cir. 2003). Because the PPA does not confer a private right of action, Plaintiff's Count Three claim under Section 3905 of the PPA fails.

### B. Count Four: Defendants Have Not Demonstrated That FE&C's TPPA Claim Fails as a Matter of Law.

In Count Four of the Amended Complaint, FE&C asserts that Relyant violated the TPPA

---

[3] The Court notes that FE&C asserts a claim for breach of contract in Count One. That claim also seeks to recover interest [*See* Doc. 52 at ¶ 44]. Defendants have not moved for judgment on the pleadings as to Count One.

by failing to pay FE&C [Doc. 52 ¶¶ 55-58]. While FE&C does not identify the precise portion of the TPPA it believes Relyant violated, it claims that the TPPA generally applies to the Parties' subcontract because the subcontract includes an applicable Tennessee choice of law provision [Doc. 64 at 11]. Section 14.1 of the subcontract specifically states that: "[t]his agreement shall be construed and interpreted in accordance with the laws of the State of Tennessee, U.S.A." [Doc. 52-1 ¶ 14.1]. Defendants counter that, as a matter of law, the Missouri Prompt Pay Act, Mo. Rev. Stat. 436.300, *et seq.* (MPPA), applies—not the TPPA—because the "construction project" was "located entirely outside the boundaries of the state of Tennessee" [Doc. 59 at 6]. [4] Therefore, Defendants assert that FE&C's Count Four TPPA claim must fail.

To determine what law applies to Count Four, this federal court sitting in diversity applies the choice of law rules of the forum in which it sits. *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). Therefore, Tennessee's choice of law rules apply. Different choice of law rules apply to contract and tort claims, and the Parties dispute whether Count Four sound in contract or tort. [*Compare* Doc. 59 at 7, *with* Doc. 64 at 10]. Here, the gravamen of Count Four is contractual. The claim rests upon the validity of provisions in the subcontract and Relyant's performance under the subcontract. Although Count Four asserts that Relyant violated a Tennessee statute, "'laws which in any manner affect the contract, whether its construction, the mode of discharging it, or which control the obligation which the contract imposes, are essentially incorporated with the contract itself.'" *Kee v. Shelter Ins.*, 852 S.W.2d 226, 228-29 (Tenn. 1993) (quoting *Webster v. Rose*, 53 Tenn. 93, 98 (1871)). Any duties owed

---

[4] By its terms, the MPPA applies to "any contract or agreement for ***private*** construction work . . . for a ***private*** owner." Mo. Rev. Stat. 436.300 (emphasis added). The Parties have not specifically addressed whether the MPPA is applicable to this contract to perform work for USACE, an engineer formation of the United States Army. But the Court need not reach that issue because Defendants have not otherwise established that the MPPA is applicable here.

5

by Relyant under the TPPA are inextricably intertwined with its contractual obligations. Defendants' sole authority for applying a tort choice of law rule does not alter the Court's conclusion. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d. Cir. 1996) (applying New York law to a claim of fraud). Accordingly, Count Four sounds in contract. *See Fifth Third Leasing Co. v. Cherokee Pontiac, Buick, Olds, GMC Trucks, LLC*, No. E2001-1628-COA-R3-CV, 2002 WL 407224, at *2 (Tenn. Ct. App. Mar. 13, 2002) ("The cause of action alleged sounds in contract and not tort because the allegations are rooted in the performance of the agreement's terms.").

For claims sounding in contract, Tennessee applies the law of the state where the Parties executed the contract, absent a contrary intent. *Town of Smyrna v. Municipal Gas Auth. of Georgia*, 723 F.3d 640, 646 (6th Cir. 2013). If the contract contains a choice of law provision, however, courts will enforce it "so long as the provision was executed in good faith, there is a material connection between the law and the transaction, and the chosen law is not contrary to the fundamental policies" of a state having a materially greater interest and whose law would otherwise govern. *Id.* at 646-47; *see also Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 632 (Tenn. 2017). This requires the Parties to have a substantial relationship with or reasonable basis for the chosen state law. *See Goodwin Bros. Leasing, Inc. v. H&B Inc.*, 597 S.W.2d 303, 306 n.2 (Tenn. 1980) (citing Restatement (Second) of Conflict of Laws § 187(2) (1971)). The fact that one party is domiciled in the chosen state is sufficient to satisfy the substantial relationship test. *See First Response, Inc v. TMC Serv., Inc.*, No. 13-cv-452, 2013 WL 5434712, at *7 (M.D. Tenn. Sept. 27, 2013) (citing *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 494 (6th Cir. 1999)).

Accepting all of the well-pled facts as true, the Parties included a valid choice of law provision in their contract. As an initial matter, Defendants contend that the provision only

6

adopted Tennessee law regarding the interpretation of the contract and not Tennessee substantive law [Doc. 59 at 7]. However, the text of the provision belies that position, and the Sixth Circuit previously rejected this argument when interpreting nearly identical contractual language. *See Boatland, Inc. v. Brunswick, Corp.*, 558 F.2d 818, 821-22 (6th Cir. 1977) (Under Tennessee conflict of law rules, Wisconsin substantive law applied to a contract which was to "be interpreted and construed according to the laws of the State of Wisconsin."); *see also Kipin Indus., Inc.*, 182 F.3d at 494 (applying Michigan choice of law rules).

Further, the Parties' choice of law provision is enforceable under Tennessee law. The record on this motion reveals no absence of good faith regarding the adoption of the Tennessee choice of law provision. Additionally, Relyant, which now seeks to avoid the applicable Tennessee law, is a Tennessee company [Doc. 52 ¶ 2]. Therefore, there is a sufficient material connection between Tennessee law and the transaction. Finally, Defendants have not shown that applying Tennessee law would conflict with a fundamental policy of a state with a materially greater interest. To violate a fundamental policy, a party must assert more than that the chosen law will dictate a different result. *Servpro Ind., Inc. v. Woloski*, No. 17-cv-1433, 2019 WL 3552516, at *2-3 (M.D. Tenn. Aug. 5, 2019) (citing *Banek v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993)); *Williams v. Smith*, 465 S.W.3d 150, 155-56 (Tenn. Ct. App. 2014). Defendants argue that Missouri law should apply to Count Four, but they have failed to identify a fundamental Missouri policy that is contrary to the TPPA, and the Court has not discerned one. Moreover, it is not clear that Missouri would have a materially greater interest than Tennessee in evaluating the way a Tennessee company performs its obligations under a subcontract with a Washington company. In today's connected world, sophisticated companies work and operate in multiple jurisdictions and may be subject to a patchwork of state laws at any

7

one time. Therefore, the Parties' choice of law provision is valid, and Tennessee substantive law—not Missouri law—is generally applicable to Count Four. Accordingly, the Court denies Defendants' motion for judgment on the pleadings as to Count Four.

### C. Count Five: Violations of TPPA Sections 103 and 104

Count Five of the Amended Complaint asserts that Relyant violated Section 103 of the TPPA by withholding ten percent (10%) of the amount of each invoice as retainage and that Relyant violated Section 104 of the TPPA by not placing the relevant retainage in a separate escrow account [Doc. 52 ¶¶ 59-64]. The Parties' contract provides that Relyant "***may retain a percentage from the progress payments*** in accordance with the Prime Contract or, ***if no retention is specified therein, a maximum of ten percent (10%) of the amount of each invoice***" [Doc. 52-1 ¶ 6.4 (emphasis added)]. The MPPA also allowed up to ten percent (10%) retainage to be withheld.[5] Missouri Rev. Stats. § 436.303 (2017). But the contract includes a valid Tennessee choice of law clause [Doc. 52-1 ¶ 14.1]. And the TPPA provided that "***[a]ll construction contracts on any project in this state***, both public and private, may provide for the withholding of retainage; provided however, that ***the retainage amount may not exceed five percent (5%)*** of the amount of the contract." Tenn. Code Ann. § 66-34-103(a) (2017) (emphasis added).

In contrast to the provision addressing the amount of retainage authorized, the subcontract is silent on the exact issue of whether authorized retainage must be placed in an escrow account [*See* Doc. 52-1]. But the subcontract does include a valid Tennessee choice of law clause, which provides that the subcontract would be "construed and interpreted in accordance with the law of the State of Tennessee" [*Id.* ¶ 14.1]. And in Section 17.6 of the contract the Parties "agree that if

---

[5] The MPPA provides that "retainage shall be held by the owner." Missouri Rev. Stats. § 436.303. The Parties have not briefed whether the MPPA authorizes a contractor to withhold retainage, but that issue does not affect the Court's analysis.

8

certain terms and conditions are required by law, that this Subcontract shall be deemed to have and hereby does incorporate such terms and conditions herein by reference." [*Id.* ¶ 17.6]. Section 104 of the TPPA provided that "***[w]henever, in any contract for the improvement of real property, a certain amount or percentage of the contract price is retained, that retained amount shall be deposited in a separate, interest-bearing, escrow account*** with a third party which must be established upon the withholding of any retainage." Tenn. Code Ann. § 66-34-104(a) (2017) (emphasis added). "Compliance with [Section 104] shall be mandatory, and may not be waived by contract." Tenn. Code. Ann. § 66-34-104(j) (2017). The MPPA was silent on the issue of whether retainage must be placed in an escrow account. *See* Mo. Rev. Stat. § 436.303, *et seq*. (2017).

### i. FE&C Fails to State a Claim under Section 103 of the TPPA.

Against this backdrop, the express terms of the Parties' agreement controls, and FE&C fails to state a claim under Section 103 of the TPPA. Section 6.4 of the contract specifically provides that "if no retention is specified" in the Prime Contract, Relyant may retain a "percentage from the progress payments" up to "a maximum of ten percent (10%) of the amount of each invoice" [Doc. 52-1 ¶ 6.4]. And Section 103 of the TPPA does not trump this express provision of the Parties' agreement. By its terms, Section 103 of the TPPA only applied to "construction contracts on any project in this state." Tenn. Code Ann. § 66-34-103(a) (2017). The project at issue was not in the state of Tennessee; rather it was in the state of Missouri [*See* Doc. 52-1 at 1, 21 (indicating that the "Scope of Work" is "Repair and Renovate, Atlantis Dorm, B1552 at Whiteman Airforce Base, Missouri")]. Therefore, TPPA Section 103 does not apply to this contract.

Even if TPPA Section 103 were technically applicable to the Parties' agreement, [*see*

9

Docs. 64 at 11-14], Section 103 of the TPPA, as incorporated through the more general provisions of the contract, and Section 6.4 of the contract would be in direct conflict with one another [*Compare* Tenn. Code. Ann. 66-34-103 (2017), *with* Doc. 52-1 ¶ 6.4]. Under Tennessee law, when an agreement incorporates both specific and general provisions related to the same issue, the specific provision controls. *See Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 433 (6th Cir. 2012) (citing *Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) ("As a rule, where there are, in a contract, both general and special provisions relating to the same thing, the special provisions control." (citation omitted))). And FE&C has given the Court no reason to reject that rule here. Therefore, the specific, express provision in Section 6.4 authorizing retainage up to ten percent (10%) would control over the more general provisions of the contract regarding incorporating all terms and conditions "required by law" [*See* Doc. 52-1 ¶¶ 14.1, 17.6]. Accordingly, FE&C fails to state a claim under Section 103 of the TPPA.

### ii. FE&C Has Sufficiently Alleged a Violation of Section 104 of the TPPA.

In contrast to Section 103, by the terms of the Parties' agreement, FE&C has stated a claim under Section 104 of the TPPA. The Parties agreed that their contract would be "construed and interpreted in accordance with the law of the State of Tennessee," [Doc. 52-1 ¶ 14.1], and that their contract is "deemed to have" incorporated any terms that are "required by law," [*id.* ¶17.6]. Tennessee law, specifically Section 104 of the TPPA, required that "whenever" a percentage of the contract price is retained "that retained amount shall be deposited in a separate, interest-bearing, escrow account." Tenn. Code Ann. § 66-34-104(a), (j) (2017). Compliance with Section 104 was required by Tennessee law and "may not be waived by contract." *Id.* § 104(j). Thus, the Parties' agreement incorporated Section 104's requirement that any retainage be deposited in an

10

escrow account. The MPPA, which is silent on this issue, does not conflict with or trump the terms of the Parties' agreement. *See* Mo. Rev. Stat. § 436.303 (2017). FE&C alleges that Relyant, a company in Tennessee, withheld ten percent (10%) of each invoice as retainage without placing the funds in escrow [Doc. 52 ¶¶ 60, 62]. FE&C has therefore pled a claim for a violation TPPA Section 104.

### D.  Count Six:  The Contract Bars Recovery of Punitive Damages.

Count Six seeks punitive damages for the conversion of FE&C's equipment [Doc. 52 ¶¶ 65-73]. FE&C alleges that Relyant had no right to possess FE&C's equipment under the subcontract [*Id.* ¶ 67]. FE&C further asserts that it is entitled to punitive damages because Relyant took the property with "an evil motive or reckless indifference to the rights of FE&C" [*Id.* ¶ 73]. Defendants counter that Section 22 of the contract bars punitive damages for conversion [Doc. 59 at 7-9]. Section 22 specifically limits Relyant's liability by prohibiting any recovery "IN CONTRACT, TORT, OR OTHERWISE, FOR ANY LOSS OF PROFITS OR BUSINESS, OR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, ARISING FROM OR AS A RESULT OF" the contract [Doc. 52-1 ¶ 22 (emphasis in original)].

FE&C's conversion claim arises "from or as a result of" the subcontract and is subject to the contract's limitations on liability "in contract, tort, or otherwise" [*See id.* (deemphasized)]. Section 11.1 of the subcontract authorized Relyant to "take possession of all materials, supplies, equipment, and facilities purchased or paid for by [FE&C], for its own" upon termination of the contract for cause [Doc. 59-1 ¶ 11.1]. Thus, Relyant's right to the equipment (or lack thereof) turns on the terms of the subcontract and arises as a result of the subcontract. FE&C's Amended Complaint acknowledges that the conversion claim arises from the subcontract when asserting that

11

"Relyant's termination of the Subcontract was improper and, therefore, Relyant had no right to the possession of FE&C's equipment to complete the Project" [*See* Doc. 52 ¶ 67]. The fact that FE&C asserts a claim for the tort of conversion instead of a breach of Section 11.1 of the subcontract does not render the limitation on liability inapplicable. *See Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008) ("[T]he mere fact that a plaintiff has pled his claim as a tort or a violation of federal statute does not determine whether the claim 'arises' from the contract."); *see also Gen. Env't Sci. Corp. v. Horsfall*, 25 F.3d 1048, 1994 WL 228256, *8 (6th Cir. 1994) (table) (applying a forum selection clause even though the claim was not "a direct action for breach of contract" because the claim arose from the contract); *Tritt v. Category 5 Records, LLC*, 570 F. Supp. 2d 977, 980-81 (M.D. Tenn. 2008) (applying a forum selection clause to a tort claim that arose under the contract). Moreover, Section 22 explicitly applies to any liability sounding in "TORT" as well [Doc. 52-1 ¶ 22 (emphasis in original)]. Because Relyant's right to the equipment, if any, arises from the subcontract, the contractual limitation on liability applies.

Contrary to FE&C's argument, the punitive damages waiver is not an unenforceable exculpatory clause in violation of Tennessee law [*See* Doc. 64 at 6-8]. Exculpatory clauses are generally enforceable; but, Tennessee prohibits parties from contracting away **liability** for intentional conduct, recklessness, or gross negligence. *See Copeland v. Healthsouth/Methodist Rehab. Hosp., LP*, 565 S.W.3d 260, 270 (Tenn. 2018). A party may, however, waive its right to punitive damages, which punish a wrongdoer beyond general liability. *See Com. Painting Co. v. Weitz Co.,* No. W2019-2089-COA-R3-CV, 2022 WL 737468, at *28 (Tenn. Ct. App. Mar. 11, 2022) (finding that a contractual waiver barred punitive damages); *see also Commc'ns Unlimited Cont. Serv., Inc. v. Comdata, Inc.*, No. 17-cv-1158, 2020 WL 606592, at *7 (M.D. Tenn. Feb. 7, 2020) (upholding a waiver of punitive damages); *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d

12

740, 755 (E.D. Tenn. 2014) (upholding a waiver of punitive damages because it did "not purport to deprive plaintiff of damages under the contract; rather it merely limits what damages plaintiff is entitled to and the manner in which those damages can be enforced."). Section 22 does not allow Relyant to avoid *liability* for its actions. Punitive damages "are not intended to compensate a wronged party; they serve as punishment for bad conduct." *Com. Painting Co.*, 2022 WL 737468 at *27. Section 22, which FE&C agreed to, only precludes it from obtaining punitive, non-compensatory damages from Relyant [*See* Doc. 52-1 ¶ 22].

Further, a contractual provision waiving punitive damages can apply to a claim for conversion. FE&C cites to *Bejing Fito Med. Co. v. Wright Med. Tech., Inc.*, No. 15-cv-2258, 2017 WL 5170126, at *1 (W.D. Tenn. Feb. 21, 2017), for the proposition that limitations of liability for intentional wrongdoing are null and void, but that case upheld a limitation on punitive damages because the clause "allow[ed] liability for actual and direct damages, and therefore [was] not substantively unconscionable," *id.* at *8. Similarly, Tennessee has upheld a waiver of punitive damages even against allegations of fraud. *See Com. Painting Co.*, 2022 WL 737468, at *28. Punitive damage waivers, by their nature, protect against intentional conduct because punitive damages serve to punish egregious conduct. As specifically relevant here, punitive damages for conversion may only be awarded when the conversion is "accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act." *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720-21 (Tenn. Ct. App. 2012) (internal citations omitted). Therefore, if Section 22 did not apply to intentional or reckless conduct, as FE&C asserts, then all waivers of punitive damages would be void. Allowing parties to intentionally waive punitive damages for conversion advances Tennessee's policy that punitive damages are "typically not available in a breach of contract case" and "are to be awarded only in

13

the most egregious of cases." *See Com. Painting Co.*, 2022 WL 737468, at *24 (internal citations omitted). Therefore, even assuming Relyant intentionally breached the contract without cause by converting FE&C's equipment, FE&C waived punitive damages. Consequently, FE&C has failed to state a claim for punitive damages in Count Six.

### E. Counts Four and Seven: FE&C's Demand for Attorney's Fees and Costs

In Count Four of the Amended Complaint, alleging a violation of the TPPA, and Count Seven, asserting a violation of the Miller Act, FE&C seeks attorney's fees and costs against Relyant (Counts Four and Seven) and Lexon (Count Seven) [Doc. 52 ¶¶ 58, 74-77]. Defendants assert that as a matter of law, Section 19 of the Parties' contract precludes FE&C from recovering attorney's fees and legal expenses [Doc. 59 at 9]. Section 19 states:

> If a dispute arises relating to the performance of the Work covered by this Agreement, and legal or other costs are incurred by the Parties, it is agreed that each part shall be responsible for its own court costs, attorney's fees, and any other related legal expenses.

[Doc. 52-1 ¶ 19]. FE&C counters that the TPPA, which the Parties' incorporated into their contract as discussed above, provides that "[r]easonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith." Tenn. Code Ann. § 66-34-602(b) (2017). And the TPPA provides that:

> Except as specifically noted, compliance with §§ 66-34-205, 66-34-304, and **66-34-602 may not be waived by contract** and these sections are applicable to all private contracts and all construction contracts with this state, any department, board or agency thereof, including the University of Tennessee, all counties and municipalities and all departments, boards or agencies thereof, including all school and education boards, and any other subdivision of the state.

*Id.* at § 66-34-701. In its Amended Complaint, FE&C alleged that Relyant acted "in bad faith" by failing to pay FE&C, as required under the TPPA [Doc. 52 ¶ 58].

Regarding the Miller Act claim (Count Seven), FE&C asserts that Lexon's liability is that

14

of Relyant's, and because Relyant may be liable for attorney's fees and costs under the TPPA, Lexon may be liable as well [Doc. 64 at 20].  FE&C raised a claim for attorney's fees against Relyant in Count Seven too, but it provided no basis for the recovery of attorney's fees against Relyant in its Response [*Id.* at 20].  Defendants argue that legally Miller Act claims cannot include a request for the recovery of attorney's fees based on state law [Doc. 67 at 11].

### i. Defendants Have Not Shown That FE&C's Claim for Attorney's Fees in Count Four under the TPPA Fails as a Matter of Law.

Generally, Tennessee follows the American Rule that Parties pay their own attorney's fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).  A party may only recover attorney's fees if a specific contractual or statutory provision creates a right to recovery or if a recognized exception to the American Rule applies.  *Id.*  Contract provisions awarding attorney's fees are strictly construed in Tennessee.  *Barrett v. Ocoee Land Holdings, LLC*, No. E2015-242-COA-R3-CV, 2016 WL 297688, at *5 (Tenn. Ct. App. Jan. 25, 2016).  A contract must "specifically or expressly provide for attorney['s] fees" to permit their recovery.  *Cracker Barrel*, 284 S.W.3d at 309.

Here, consistent with the prevailing American Rule, the Parties' contract expressly states that each party will be responsible for its own attorney's fees and costs "if a dispute arises relating to the performance of the Work covered" by their agreement [Doc. 52-1 ¶ 19].  But the Parties, through their Tennessee choice of law provision, also agreed that their contract would be "construed and interpreted in accordance with the law of the State of Tennessee," [*id.* ¶ 14.1], and that their contract is "deemed to have" incorporated any terms that are "required by law," [*id.* ¶ 17.6].  The TPPA provides that "[r]easonable attorney's fees may be awarded against the nonprevailing party" for a TPPA claim if that party "acted in bad faith" and that this section of the law "may not be waived by contract."  Tenn. Code Ann. §§ 66-34-602(b), 701 (2017).

15

"Tennessee law requires courts to read all parts of the contract together to give meaning to the document as a whole, in order to construe its plain meaning." *Chad Youth Enhancement Ctr., Inc.*, 474 F. App'x at 432-33 (citations and quotations omitted). When the Parties' choice of law provision would invalidate an express contractual provision, the Court generally presumes that the conflicting choice of law provision was a mistake and applies the Parties' express contractual provision. *See Kipin Indus., Inc.*, 182 F.3d at 495 (applying the Restatement (Second) of Conflict of Laws Section 187 Comment E, which Tennessee has accepted, to a choice of law provision under Michigan law); *see also Goodwin Bros. Leasing, Inc.*, 597 S.W.2d at 306 n.2 (applying Section 187 to a choice of law provision under Tennessee law). To do otherwise "would defeat the expectations of the parties." *See* Restatement (Second) of Conflict of Law §187, cmt. e. This conclusion does not end the Court's inquiry, however. If the express provision would be invalid under the chosen state law (here Tennessee) **and** under the law of the state that would govern in the absence of a choice of law provision, "the doctrine of mistaken choice of law will not be employed to permit the parties to overcome the policy of both states." *Kipin Indus., Inc.*, 182 F.3d at 495-96. Because neither the relevant pleadings nor the Parties' briefing contain sufficient facts to determine which state's law would apply in the absence of the choice of law provision, material issue of fact exist regarding whether attorney's fees may be authorized for Count Four. Therefore, at this stage in the litigation, FE&C's claim for attorney's fees under Count Four may proceed.

### ii. FE&C Cannot Recover Attorney's Fees in Count Seven under the Miller Act.

FE&C, however, may not recovery attorney's fees against Defendants for its Miller Act claim in Count Seven. As an initial matter, the TPPA does not apply to insurance companies and cannot be the basis for a recovery of attorney's fees against Lexon. *See* Tenn. Code Ann. § 66-34-703 (2017). Further, Miller Act remedies are generally a matter of federal law. *F.D. Rich. Co.*

16

*v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 127-28 (1974), *superseded by statute on other grounds*, 31 U.S.C. § 3905(j). "The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *Id.* at 127. In reaching this conclusion, the Supreme Court emphasized that federal courts should be free "from the morass of trying to divine a 'state policy' as to the award of attorneys' fees in suits on construction bonds." *Id.* at 128. Instead, the Miller Act's uniform national rule better serves the expectations of potential litigants, especially because federal contracts often involve construction in multiple states and—as is the case here—parties often have little connection to the state where the project is located. *Id.* at 127. Thus, federal law provides the exclusive remedies under the Miller Act. And the Miller Act does not authorize the recovery of attorney's fees. *Id.* at 126.

However, attorney's fees may also be awarded for a Miller Act claim based on the express provisions of the relevant parties' contract. *See Owners Ins. Co. v. Fid. & Deposit Co. of Md.*, 21-cv-184, 2021 WL 3525174, at *6 (E.D. Mo. Aug. 10, 2021) (collecting cases). The Miller Act formerly authorized a claimant to recover all "sums justly due." 40 U.S.C. § 270b(a) (2000); *see also Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 267 F. Supp. 3d 205, 213 (D.D.C. 2017). If the Parties' subcontract expressly provided for payment of attorney's fees, this language could authorize the payment of contractually-obligated attorney's fees. *See Paige Int'l*, 267 F. Supp. 3d at 213-14. Congress subsequently amended the Miller Act to allow "judgment for the amount due," but the Act continues to permit contractually-obligated attorney's fees. *See* 40 U.S.C § 3133(b)(1); *see also Paige Int'l*, 267 F. Supp. 3d at 213. Lexon's payment bond does not mention attorney's fees, and that contract does not create a basis for their recovery from it [*See* Doc. 52-2 at 3]. Regarding Relyant, FE&C does not identify a distinct basis for the recovery of attorney's

17

fees from Relyant in Count Seven separate from Count Four [*see* Doc. 64 at 20]. Accordingly, whether attorney's fees may be awarded against Relyant turns on whether the contract's incorporation of all terms and conditions "required by law" authorizes the recovery of attorney's fees for a Miller Act claim.

Regardless of whether the contract incorporated the TPPA's provision authorizing the recovery of attorney's fees for a TPPA claim, that provision does not provide for the recovery of attorney's fees for a Miller Act violation. The TPPA only awards attorney's fees for a failure to make payment under the provisions of the TPPA. *See* Tenn. Code. Ann. 66-34-602(b) (2017). The TPPA does not authorize attorney's fees for other causes of action. As established above, state law cannot create remedies for Miller Act violations. *F.D. Rich. Co.*, 417 U.S. at 127-28. The subcontract only permits the recovery of attorney's fees if "required by law" [ *See* Doc. 52-1 ¶ 17.6]. Therefore, because the Miller Act does not require an award of attorney's fees, the subcontract does not authorize their recovery. Thus, FE&C cannot recover attorney's fees under the Miller Act in Count Seven.

## IV. Conclusion

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' "Motion for Partial Judgment on the Pleadings" [Doc. 59]. The Court **DISMISSES** (1) Count Three of the Amended Complaint, (2) Plaintiff's claim for a violation of Section 103 of the TPPA in Count Five, (3) Plaintiff's claim for punitive damages in Count Six, and (4) Plaintiff's claim for attorney's fees in Count Seven. The Court **DENIES** Defendants' motion for judgment on the

18

Case 3:19-cv-00073-KAC-JEM   Document 122   Filed 05/27/22   Page 18 of 19   PageID #: 3015

pleadings as to (1) Count Four of the Amended Complaint, (2) Section 104 of the TPPA in Count Five, and (3) Plaintiff's claims for attorney's fees from Relyant in Count Four.

IT IS SO ORDERED.

s/ Katherine A. Crytzer  
KATHERINE A. CRYTZER  
United States District Judge